COMMUNITY SAVINGS & LOAN COMPANY OF CLARKSBURG, *a Corporation,* v. ERNEST K. JAMES, *State Tax Commissioner*

(CC 597)

Submitted January 11, 1939. Decided January 24, 1939.

6

*Clarence W. Meadows,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for appellant.

*Steptoe & Johnson, James M. Guiher,* and *William P. Nottingham,* for appellee.

HATCHER, JUDGE:

This cause presents the question, does an industrial loan company, organized under the laws of this state, do *a statutory banking business?*

In 1921, the legislature imposed uniform taxes upon the privileges of operating "banks, banking institutions * * * ", and of engaging in "any other gainful business" not "included" in the statute. Acts, chapter 110, section 2. These taxes were uniformly increased in 1925. Acts, 1st Ex. Sess., chapter 1. Afterwards, they remained constant until 1933, when by Acts, 1st Ex. Sess., chapter 33, section 2, both the tax rates and the descriptions of the businesses taxed were varied as follows: in subsection (f), "The business of banking" was taxed five-tenths of one per cent of its gross income, and in subsection (h), "any service, business or calling" not otherwise specifically taxed under the act, one per cent of its gross income. Section 2 was amended in 1935 (Acts, chapter 86), but the two subsections were not affected by the amendment. In 1937, subsection (f) was repealed, as of April 1st of that year. Acts, chapter 11.

The state tax commissioner is attempting to collect a tax from the plaintiff under subsection (h) for the period between April 1 and December 31, 1937. The bill herein

seeks to enjoin him on the ground that the plaintiff is engaged in the business of banking, which allegedly ceased to be taxable April 1, 1937. The circuit court overruled a demurrer to the bill, and certified here its sufficiency.

The bill shows that plaintiff's last charter, issued in 1928, authorized it to conduct the business of an industrial loan company, and alleges that, pursuant thereto and with the approval of the commissioner of banking (to whose authority plaintiff is subjected by statute), it has made loans to individual borrowers, discounted commercial paper, accepted and handled saving deposits and time deposits, and, in general, has conducted "substantially the same type or character of business as an ordinary commercial bank, with the exception that it has not handled * * * deposits subject to check."

Plaintiff is a West Virginia corporation, and its position presupposes that it is a lawfully operated industrial loan company under the laws of this state; consequently, any of plaintiff's alleged activities which have exceeded the powers conferred on such companies by Code, 31-7-6 cannot be considered, despite alleged consent of the banking commissioner. Citations by plaintiff's counsel of extrastate authorities on what constitutes a banking business will also be disregarded, since 31-4-18 *permits only federal banking associations "and banking institutions chartered under the laws of this state, as defined in this article"* to engage in the business of banking. Under section 1 of the article, sections six and seven define the term, "banking institution." Section six confers on a banking institution "all of the powers necessary for, or incidental to, the business of banking." Section seven relates to trust companies, and confers on them certain powers incident to trusts, together with the full powers conferred on banking institutions by section 6. Thus, it appears by express statutory provisions that a lawful banking business in this state is limited to the institutions vested by the statute with absolute banking powers. Industrial loan companies are not so vested. See 31-7-6.

Consequently, under the statute, they cannot lawfully engage in the business of banking. Specifically, plaintiff's bill admits that it does not exercise one of the chief and characteristic powers of a modern banking institution, viz., accept deposits subject to check. Hence, under the express definitions of 31-4-1 and 6, it is not a banking institution, and under 31-4-18, it is not conducting a banking business cognizable in court.

Plaintiff alleges that for 16 years, from 1921 to 1937, it has paid acceptably to the successive tax commissioners, the taxes on the privilege of doing business "computed" under the several sections of the statute applying to banks, banking institutions and the banking business; wherefore, plaintiff contends that such long administrative interpretation, presumably known to and acquiesced in by the legislature, reflects legislative approval and binds the defendant. Since the rate of taxation was the same on banks, etc., as on other gainful businesses from 1921 until 1933, payment of the taxes during that period, merely upon the computation of that rate, would apply no more to the banking business than to other businesses. In 1934, the tax commissioner did classify for taxation industrial loan companies with banks, and for that year, 1935, and 1936, did permit plaintiff to pay taxes computed on the lesser rate applicable to the banking business. That favorable classification, however, did not continue long enough to be taken as reflecting legislative approval.

Plaintiff places special reliance on Acts 1927, chapter 20, section 14, which provided "All industrial loan companies under this act shall be taxed the same as banks organized under the laws of this state." If this provision was intended to relate to privilege taxes, it was gratuitous, since the tax rate thereof then was, and always had been, the same upon the two businesses. Whatever the legislative intention, the provision was omitted from the Code of 1931 and has never been re-enacted. A note to 31-7 of that Code by the Code Committee on Revision states that it was omitted because covered by 11-3-12 and 14. Section 12 relates to the manner of assessment and section 14 provides that the shares of stock of both banks and in-

dustrial loan companies shall be taxed at their true and actual value. Whether the construction, i. e., sameness of assessment valuation, given Acts 1927, ch. 20, sec. 14, by the Committee is correct or not is immaterial here. The Code revisers did not mention it, and there has been no subsequent legislative action on it.

The ruling of the circuit court is reversed.

*Reversed.*

On Petition for Rehearing:

In a petition to rehear, plaintiff advances the idea that this court, in construing Code, 31-4-18, did not give proper weight to the following qualifying provision of the section: "Nothing contained in this section shall affect the rights, privileges, objects or purposes delegated to other corporations by the general corporation law or other laws of this state."

The Constitution, Article XI, Section 6, drew a line between a bank and every other corporation, including industrial loan companies, by imposing double stock liability, only, upon the stockholders of "any bank hereafter authorized by the laws of this State, whether of issue, deposit or discount." That line could not be crossed by industrial loan companies even under favorable legislative enactment. We are advised of no general corporation law attempting such favor; and assuredly Code, 31-7-6, from which industrial loan companies derive their specific right to transact business, does not purport to rate them as banks.